NOT FOR PUBLICATION                              (Docket Entry No. 6)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

—————————————————————— :
J.M., a minor, individually    :
and by his Parent and legal    :
guardian, A.S.,                :
                               :
             Plaintiffs,       :    Civil No. 04-4046 (RBK)
                               :
        v.                     :    **OPINION**
                               :
KINGSWAY REGIONAL SCHOOL       :
DISTRICT and TERRENCE          :
CROWLEY, in his individual     :
and official capacity,         :
                               :
             Defendants.       :
—————————————————————— :


**KUGLER**, United States District Judge:

        In this civil action under the Individuals with

Disabilities Education Act ("IDEA"), the Rehabilitation Act of

1973, and 42 U.S.C. sections 1983 and 1988, plaintiffs J.M. and

his mother, A.S., claim that the Kingsway Regional School

District ("District") did not provide J.M. with a free

appropriate public education ("FAPE") during the 2001-02 and

2002-03 school years.  Plaintiffs seek compensatory education and

reimbursement of the cost of sending J.M. to private boarding

school, as well as punitive damages, attorney's fees, and costs.

Defendants——the District and its Superintendent, Terrence

Crowley——have counterclaimed for enforcement of an administrative ruling that denied Plaintiffs' request for reimbursement.

Defendants now move for summary judgment and, in the alternative, to dismiss the complaint for failure to state a claim.  For the reasons expressed below, the motion for summary judgment will be granted in part and denied in part, and the motion to dismiss will be denied.[1]

I.      **BACKGROUND**

J.M. was born on November 25, 1985.  He has been diagnosed with Attention Deficit Hyperactivity Disorder and Adjustment Disorder with disturbance of conduct.  J.M.'s parents, A.S. and G.M., are divorced and have joint custody of J.M.

On April 26, 2000, both A.S. and G.M. signed an

---

[1] Though their Complaint is more far-reaching, Plaintiffs assert in their opposition brief that they "limit their appeal":

> to a request to remand two issues never
> decided by the ALJ, to wit, (1) whether J.M.
> being a danger to himself and/or others was
> an exception to the unilateral placement
> notice requirement and (2) whether plaintiffs
> were entitled to compensatory education as an
> alternative remedy to unilateral placement
> reimbursement.

(Pls.' Opp. at 2.)  However, Plaintiffs' brief, which elsewhere requests that this Court "reserve on defendant[s'] motion for summary judgment," suggests that Plaintiffs do not wish to limit their entire case, but rather only the present motion for summary judgment, to those issues.  (See id. at 30.)  This Court hereby declines to so limit the present motion.

acknowledgment that they had "received a copy of <u>Parental Rights</u> <u>in Special Education</u> with Addendum (PRISE) and the short Procedural Safeguards Statement." (Defs.' Br. Ex. A at 7.[2]) The "PRISE" stated:

> If you plan to place your child in a private school and seek reimbursement from the district, you must inform the school district at an IEP meeting or provide the school district with written notice at least 10 days (excluding weekends only) prior to the enrollment of your child in the private school.  You must state your disagreement with the school district's IEP, the placement proposed by the school district and your intention to enroll your child in a private school.
>
> If the school district has provided you with written notice of its intent to evaluate your child before your removal of your child from the public school, you should make your child available to the school district for evaluation in order to protect your claim for reimbursement.
>
> Failure to inform the school district of your intention to make a private placement at public expense, failure to make your child available for evaluation, or other unreasonable action on your part could result in an administrative law judge's decision to reduce or deny reimbursement for the private placement.

(Demarest Cert. ¶ 2 & Ex. A.)

In May 2001, A.S. met with District personnel to develop J.M.'s individual education plan ("IEP") for the 2001-02

---

[2] Defendants' Exhibit A contains two pages numbered "7." A.S.'s acknowledgment of receipt of the PRISE is on the second page 7.

school year.  (Defs.' Br. Ex. B. at 1.)  The resulting IEP
specified that J.M. would be mainstreamed in some classes and
receive in-class support in others.  (Id. at 7.[3])  Everyone at
the meeting, including A.S., agreed that the IEP was appropriate
for J.M.; residential placement (i.e., sending J.M. to a private
boarding school) was not discussed at that time.  A.S. signed a
copy of the IEP on May 29, 2001, and J.M. attended the Kingsway
Regional High School in New Jersey during the 2001-02 school
year.

J.M. was arrested in October 2001 after stealing A.S.'s
car, going on a high speed chase, and eluding a police officer.
Shortly thereafter, A.S. told Maria DiGiovanni, a member of the
District's Child Study Team, that she thought residential
placement might be best for J.M.

A.S. repeated her belief that J.M. needed residential
placement at a meeting with the Child Study Team on November 27,
2001.  At that meeting, the Child Study Team provided A.S. with
written notice of its intent to obtain a psychiatric update and
psychological assessment of J.M. from Dr. James Hewitt, a
psychiatrist affiliated with the District.  (Defs.' Br. Ex. E.)
However, A.S. and G.M. refused to permit the evaluation.  (Id.)
A.S. believed that an evaluation by Dr. Hewitt was unnecessary

---

[3] Defendants' Exhibit B contains two pages numbered "7."
This portion of J.M.'s 2001-02 IEP is on the first page 7.

because J.M. had been recently treated by psychiatrist Dr. Robertson Tucker outside of school; moreover, she thought that J.M. was "psychologically fragile" at the time, and did not want him to "go[] through" another evaluation. (Hr'g Tr. 186:16-21, Aug. 26, 2003). The Child Study Team, on the other hand, believed that an evaluation by Dr. Hewitt was necessary because Dr. Tucker's evaluation "addressed the concerns and behaviors at home" but did not "address [J.M.'s behavior] in the school setting." (Hr'g Tr. 99:9-14, Aug. 26, 2003.)

On May 3, 2002, A.S. met with District personnel to develop J.M.'s IEP for the 2002-03 school year. (Defs.' Br. Ex. H at 1.) Though A.S. signed the IEP, she did voice more concerns as to whether J.M. required residential placement. (Id. at 17; see Hr'g Tr. 149:5-8, Aug. 25, 2003; Hr'g Tr. 184:6-12, Aug. 26, 2003.)

On June 17, 2002, A.S. wrote to DiGiovanni to inform her that J.M. would be attending Sorenson's Ranch School, a private boarding school in Utah, during the 2002-03 school year. A.S. did not state in that letter that she would seek reimbursement from the District for the cost of sending J.M. to private school. (See Defs.' Br. Ex. I.)

On July 23, 2002, A.S. unilaterally placed J.M. at the Sun Hawk Academy ("Sun Hawk"), a private boarding school in St. George, Utah. J.M. attended Sun Hawk until May 9, 2003.

A.S. sent another letter to DiGiovanni on January 21, 2003.  That letter requested a response in writing as to whether the District was financially responsible for the cost of sending J.M. to Sun Hawk.  (Defs.' Br. Ex. J.)  After DiGiovanni told her that the District was not financially responsible for that cost, A.S. requested a "due process hearing" on May 30, 2003 pursuant to 20 U.S.C. section 1415(f).

At the hearing, conducted before Administrative Law Judge Solomon A. Metzger on August 25-26, 2003, A.S. requested reimbursement and compensatory education for the 2002-03 school year.  (Hr'g Tr. 4:19-5:2, Aug. 25, 2003; Hr'g Tr. 4:7-13, Aug. 26, 2003.)  Judge Metzger rendered a decision on November 19, 2003.  He held that J.M. and A.S. were not entitled to reimbursement for A.S.'s unilateral placement of J.M. at Sun Hawk because (1) A.S. did not give proper notice of the placement to the District until January 2003 and (2) A.S. had not given the District an "opportunity to explore placements short of an out-of-state residential treatment facility." (Defs.' Br. Ex. K at 6.)  In addition, Judge Metzger found that A.S. and G.M. had, in November 2001, denied consent for an updated psychological evaluation of J.M.  (Id. at 2.)  Judge Metzger's decision did not address the issue of compensatory education.

## II.        MOTION FOR SUMMARY JUDGMENT

Summary judgment is only appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4]  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.

The moving party must first satisfy a burden of production, which "requires the moving party to make a prima facie showing that it is entitled to summary judgment."  Celotex, 477 U.S. at 331.  Where the burden of persuasion at trial would be on the nonmoving party, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmoving

---

[4] Some courts apply a "preponderance of the evidence" standard to IDEA claims on summary judgment.  See, e.g., Patricia P. v. Bd. of Educ. of Oak Park & River Forest, 203 F.3d 462, 466 (7th Cir. 2000) (stating that district court should apply preponderance of the evidence standard on summary judgment where only evidence before court consisted of administrative record); Wall ex rel. Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y. 1996) (applying preponderance of the evidence standard on summary judgment where parties had submitted evidence beyond that contained in administrative record).  However, the Third Circuit would apply the "genuine issue of material fact" standard.  See Michael C. v. Radnor Township Sch. Dist., 202 F.3d 642, 647 (3d Cir. 2000).

party's claim; or (2) demonstrating to the Court that the
nonmoving party's evidence is insufficient to establish an
essential element of the nonmoving party's case.  Id.  If the
moving party has not fully discharged its initial burden of
production, its motion for summary judgment must be denied.  Id.
at 332.

### A.   SECTION 1983

Section 1983 provides a private right of action for
IDEA violations.  See W.B. v. Matula, 67 F.3d 484, 494 (3d Cir.
1995).  However, in order to recover under section 1983 against
the District, or against Crowley in his official capacity,
Plaintiffs "must establish that the deprivation of [their] rights
was the result of an official policy or custom." Ridgewood Bd.
of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).
(See Defs.' Br. at 24.)  Plaintiffs have provided no evidence
that the alleged IDEA violation was the result of an official
policy or custom.  Therefore, Defendants' motion for summary
judgment will be granted as to Plaintiffs' section 1983 claims
against the District and against Crowley in his official
capacity.

### B.   QUALIFIED IMMUNITY

As to Plaintiffs' claims against Crowley in his
individual capacity, Crowley argues that he is entitled to
qualified immunity.  Thus, this Court "must [first] determine

8

whether [P]laintiffs have alleged a constitutional or statutory violation." Matula, 67 F.3d at 499.  If so, Crowley "will nevertheless not be liable if '[his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Here, the Complaint alleges violations of the IDEA and the Rehabilitation Act.  (See Compl. ¶¶ 6, 10, 14, 16, 17.)  Because Plaintiffs have alleged statutory violations, this Court must address the second prong of the qualified immunity test.

"[T]o defeat a qualified immunity defense in an IDEA action, a plaintiff must show more than that he or she was denied a free, appropriate public education in a general sense; rather, a plaintiff must demonstrate 'that the particular actions taken by defendants were impermissible under law established at that time.'" Matula, 67 F.3d at 499-500 (quoting and adopting P.C. v. McLaughlin, 913 F.2d 1033, 1040 (2d Cir. 1990)).  Here, the Complaint alleges generally that Crowley failed to offer J.M. a free, appropriate public education.  However, neither the allegations in the Complaint nor the record before this Court demonstrate that Crowley took any particular actions at all, let alone that those actions were impermissible under law established at that time.  Therefore, Crowley is entitled to qualified immunity under Matula, and Defendants' motion for summary

9

judgment will be granted as to Plaintiffs' claims under the IDEA, the Rehabilitation Act, and section 1983 against Crowley in his individual capacity.

### C.   ATTORNEY'S FEES

Because summary judgment will be granted as to all of Plaintiffs' claims under section 1983, Plaintiffs will not be entitled to attorney's fees under section 1988.   Therefore, Defendants' motion for summary judgment will be granted as to Plaintiffs' claims under section 1988.

### D.   IDEA

#### 1.   <u>Reimbursement</u>

The IDEA authorizes a district court to order school authorities to reimburse a parent for the cost of enrolling her child in a private school.  20 U.S.C. § 1412(a)(10)(C)(ii). However, reimbursement may be reduced or denied under certain circumstances.  20 U.S.C. § 1412(a)(10)(C)(iii).  Defendants now argue that they are entitled to summary judgment on Plaintiffs' claim for reimbursement for A.S.'s unilateral placement of J.M. at Sun Hawk in July 2002 because (1) A.S. did not timely provide the District with proper notice of her intent to seek reimbursement until January 2003; (2) A.S. did not permit the District to conduct its own psychological evaluation of J.M.; and (3) Plaintiffs have not demonstrated that boarding school was academically necessary for J.M.  However, because there remains a

10

genuine issue of material fact as to Plaintiffs' reimbursement claim, Defendants' motion for summary judgment on that claim will be denied.

### a.   Notice

Under the IDEA, reimbursement for a unilateral placement may be reduced or denied where parents fail to give school authorities proper notice of the placement.  20 U.S.C. § 1412(a)(10)(C)(iii).  Lack of proper notice is demonstrated where:

> (aa)  at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

> (bb)  10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa).

Id.  However, reimbursement may not be reduced or denied for lack of proper notice where "the parents had not received notice . . . of the notice requirement" or where compliance with the notice requirement "would likely result in physical or serious emotional harm to the child."  20 U.S.C. § 1412(a)(10)(C)(iv)(II) & (IV).[5]

---

[5] The IDEA was amended effective July 1, 2005.  However, because amendments to the IDEA are not retroactively applicable,

It is undisputed that A.S. did not state an intent to enroll J.M. in private school at public expense at the May 3, 2002 IEP team meeting.  It is also undisputed that A.S. did not provide written notice to the District of such intent until January 21, 2003.  Thus, it is undisputed that A.S. failed to provide the District with the notice required by section 1412(a)(10)(C)(iii).  Therefore, Defendants' motion for summary judgment may be granted as to the reimbursement claim unless there exists a genuine issue as to whether A.S. received notice of the notice requirement, or whether compliance with the notice requirement would likely have resulted in physical or serious emotional harm to J.M.

Plaintiffs argue, without citation to the record, that the District did not inform A.S. of her right to reimbursement. (Pls.' Opp. at 28.)  This argument is unpersuasive even if it may be understood as a claim that the District did not provide A.S. with notice of the notice requirement.  On April 26, 2000, A.S. signed a document stating: "I have received a copy of Parental Rights in Special Education with Addendum (PRISE) and the short Procedural Safeguards Statement."  The "PRISE" advised A.S. of her right to reimbursement as well as her obligation to provide the District with ten business days' written notice of her intent

---

see Warren G. ex rel. Tom G. v. Cumberland County Sch. Dist., 190 F.3d 80, 86 n.3 (1999), this Court will apply the IDEA as it existed when the events of this case occurred.

to enroll J.M. in private school at public expense if she wished to preserve that right.  Therefore, there is no genuine issue as to whether A.S. had notice of the notice requirement.

In support of their argument that there is no genuine issue as to whether the "likelihood of harm" exception applies, Defendants argue that A.S. had decided to remove J.M. from public school more than a month before J.M. entered Sun Hawk.  (Defs.' Reply at 11-12.)  As support for this argument, Defendants cite the letter dated June 17, 2002 in which A.S. informed DiGiovanni that J.M. would "not return to Kingsway High School in the fall." (Defs.' Br. Ex. J.)  This letter, in light of the fact that A.S. did not place J.M. at Sun Hawk until July 23, 2002, is evidence that A.S. did not believe in June that J.M. required immediate residential placement.  However, it does not necessarily preclude a finding that compliance with the notice requirement would have posed a likelihood of harm to J.M. in <u>July</u>.  Moreover, the record contains evidence sufficient to establish a genuine issue of fact as to the likelihood of harm issue.  A.S. testified that she felt physically threatened by J.M. in July 2002.  (Hr'g Tr. 208:16-210:11, Aug. 26, 2003.)  Albitre testified that J.M. was "[d]efinitely a danger to himself" at the time he entered Sun Hawk.  (Albitre Dep. 21:1-4, Sept. 16, 2003.)  Dr. Tucker was also of the opinion that J.M. was "a danger to himself" at the time he entered Sun Hawk.  (<u>See</u> Tucker Dep. 38:9-40:22, 84:22-

85:8.)  Because there exists a genuine issue of fact as to
whether compliance with the notice requirement would likely have
resulted in physical or serious emotional harm to J.M.,[6]
Defendants' first argument fails.[7]

### b.    Consent to Evaluate

A plaintiff's claim for reimbursement may be reduced or
denied if:

> prior to the parents' removal of the child
> from the public school, the public agency
> informed the parents, through the notice
> requirements described in section 1415(b)(7)
> of this title, of its intent to evaluate the
> child (including a statement of the purpose
> of the evaluation that was appropriate and
> reasonable), but the parents did not make the
> child available for such evaluation.

---

[6] The Court notes that the relevant issue under the IDEA is
not, as Plaintiffs' counsel suggests in the opposition brief
(Pls.' Opp. at 29), whether J.M. was "a danger to himself or
others" at the time he entered Sun Hawk.  Rather, the relevant
issue is whether <u>compliance</u> with the notice requirement would
<u>likely</u> have resulted in <u>physical or serious emotional</u> harm to
<u>J.M.</u>; thus, even assuming that compliance would likely have
resulted in physical harm to A.S., that fact alone would not
suffice.  Though Plaintiffs' evidence is sufficient to withstand
summary judgment, Plaintiffs are cautioned that their focus at
trial ought to be on why the likelihood of harm to J.M. made
compliance with the notice requirement impracticable, not on
whether J.M. posed any danger to anyone when he entered Sun Hawk.

[7] In their opposition brief, Plaintiffs request that
"likelihood of harm" issue be remanded to Judge Metzger because
he "left [it] undecided." (Pls.' Opp. at 29.)  Although this
Court is permitted to remand issues for agency determination, <u>see</u>
<u>Carlisle Area Sch. v. Scott P. by & Through Bess P.</u>, 62 F.3d 520,
526 (3d Cir. 1995), Plaintiffs cite no authority that would
require this Court to do so here.  In the absence of any argument
to support Plaintiffs' request, this Court will deny it.

14

20 U.S.C. § 1412(a)(10)(C)(iii)(II).[8]  The requisite notice includes:

> (i) the name of the child, the address of the residence of the child, and the name of the school the child is attending;
>
> (ii) a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem; and
>
> (iii) a proposed resolution of the problem of the child to the extent known and available to the parents at the time.

20 U.S.C. § 1415(b)(7)(B).

In their motion for summary judgment, Defendants argue that Plaintiffs' claim for reimbursement should be denied because A.S. did not allow the District to conduct a "psychiatric update and psychological assessment" of J.M.  (Defs.' Br. at 22.)  The record shows that the District Child Study Team asked A.S. for permission to evaluate J.M. on November 27, 2001, and that A.S. refused.  (Defs.' Br. Ex. E.)  However, Defendants' brief contains no argument as to whether the notice they provided to

---

[8] Several circuit courts have held that, prior to the enactment of this provision on June 4, 1997, a parent's claim for reimbursement might be denied if the parent had failed to cooperate with the school district in the placement process.  See, e.g., Patricia P. v. Bd. of Educ. of Oak Park & River Forest, 203 F.3d 462, 468 (7th Cir. 2000) (analyzing IDEA claim that arose during 1994 and 1995); Schoenfeld v. Parkway Sch. Dist., 138 F.3d 379, 382 (8th Cir. 1998) (analyzing IDEA claim that arose during 1992 and 1993).  Here, because Plaintiffs' claims arose after the enactment of this provision, the statutory language controls.

A.S. complied with the requirements of section 1415(b)(7)(B).
Therefore, Defendants have not fully discharged their initial
burden of production on summary judgment, and their second
argument fails.

### c.  Academic Necessity

To recover on a claim for reimbursement of a unilateral
private placement under the IDEA, a plaintiff has the burden of
demonstrating that the private placement was proper.  <u>See</u>
<u>Ridgewood</u>, 172 F.3d at 248 (citing <u>Florence County Sch. Dist.</u>
<u>Four v. Carter</u>, 510 U.S. 7 (1993)).  To meet this standard, "a
disabled student is not required to demonstrate that he cannot be
educated in a public setting. . . . [T]he relevant question is
not whether a student could in theory receive an appropriate
education in a public setting but whether he will receive such an
education."  <u>Id.</u> at 248-49; <u>but see</u> <u>Kruelle v. New Castle County</u>
<u>Sch. Dist.</u>, 642 F.2d 687, 693 (3d Cir. 1981) ("Analysis must
focus, then, on whether full-time placement may be considered
necessary for educational purposes, or whether the residential
placement is a response to medical, social or emotional problems
that are segregable from the learning process."); <u>D.B. v. Ocean</u>
<u>Township Bd. of Educ.</u>, 985 F. Supp. 457, 497 (D.N.J. 1997)
(inquiring whether residential placement was "based upon genuine
educational need").

Defendants argue that Plaintiffs are not entitled to

16

reimbursement because Plaintiffs have not demonstrated that residential placement was necessary for J.M.'s educational purposes. (Defs.' Br. at 16.) However, to require Plaintiffs to demonstrate that residential placement was necessary for J.M.'s educational purposes would be to require them to demonstrate that J.M. could not be educated in a public setting. Under <u>Ridgewood</u>, this Court may not do so. Therefore, Defendants' third argument fails.

### 2. **Compensatory Education**

Defendants' opening brief does not address Plaintiffs' claim for compensatory education. Defendants' reply brief implies that Plaintiffs are not entitled to compensatory education because Plaintiffs are not entitled to reimbursement. (<u>See</u> Defs.' Reply at 13-14.) However, Defendants have not established the lack of a genuine issue of material fact as to Plaintiffs' reimbursement claim. <u>See</u> discussion <u>supra</u> Part II.D.1. Because Defendants provide no other argument as to why they are entitled to summary judgment on the compensatory education claim, they have not met their initial burden of production as to that claim. Therefore, Defendants' motion for summary judgment will be denied as to the compensatory education claim.

### E. **REHABILITATION ACT**

Defendants argue that they are entitled to summary

17

judgment on the Rehabilitation Act claim because (1) such a claim "may not be maintained if it is essentially the same claim as that asserted by the plaintiffs under the [IDEA]" and (2) Plaintiffs have made no showing of bad faith or gross misjudgment. (See Defs.' Br. at 22-23.) Defendants' first argument fails because "the failure to provide a free appropriate public education . . . could violate § 504." See Ridgewood, 172 F.3d at 253; Matula, 67 F.3d at 492-93. Defendants' second argument fails because the Third Circuit does not require a Rehabilitation Act plaintiff to make a showing of bad faith or gross misjudgment; rather, it is enough for the plaintiff to prove that "defendants know or should reasonably be expected to know of his disability." See Ridgewood, 172 F.3d at 253. Therefore, Defendants' motion for summary judgment will be denied as to Plaintiffs' Rehabilitation Act claim.

### F. COUNTERCLAIM

Defendants' brief does not specifically address their counterclaim for enforcement of Judge Metzger's decision. Moreover, as discussed at Part II.D supra, Defendants have not demonstrated the absence of a genuine issue as to the IDEA claim. Therefore, to the extent that Defendants' motion for summary judgment extends to their counterclaim, it will be denied.

18

III.      **MOTION TO DISMISS**

　　　　In the alternative, defendants move to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that "in light of the pertinent law on the critical issues in this case, the plaintiffs can prove no set of facts that would entitle[] them to relief." (Defs.' Br. at 29.)  "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citing Ditri v. Coldwell Bankers Residential Affiliates, Inc., 954 F.2d 869, 871 (3d Cir. 1992)).  Here, Defendants provide no argument as to why the allegations contained in Plaintiffs' complaint are insufficient, other than to refer back to their arguments as to why they are entitled to summary judgment.  Because Defendants' motion to dismiss is purely duplicative of their motion for summary judgment, the motion to dismiss will be denied as to the claims remaining in this case for the same reasons that summary judgment on those claims was denied.  As to the claims that will be disposed of on summary judgment, the motion to dismiss those claims will be denied as moot.

IV.       **CONCLUSION**

　　　　Defendants' motion for summary judgment will be granted as to Plaintiffs' claims under 42 U.S.C. sections 1983 and 1988,

19

and as to Plaintiffs' claims under the IDEA and the
Rehabilitation Act against Crowley in his individual capacity.
The motion for summary judgment will be denied as to Plaintiffs'
claims under the IDEA and the Rehabilitation Act against the
District and against Crowley in his official capacity.
Defendants' motion to dismiss will be denied.  The accompanying
Order shall issue today.


Dated:   August 18, 2005          /s/ Robert B. Kugler
                                  ROBERT B. KUGLER
                                  United States District Judge